UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, | ) ) ) |
| Plaintiff, | ) ) **Case No. SA-98-cv-0629-FB (HJB)** |
| vs. | ) ) |
| **HOLD BILLING SERVICES, et al**. | ) ) |
| Defendants. | ) ) ) |

## FEDERAL TRADE COMMISSION'S TRIAL BRIEF

Contempt Defendants make a host of factual and legal errors in their Proposed Findings of Fact and Conclusions of Law.  In order to make trial as efficient as possible, the Federal Trade Commission ("FTC" or "Commission") would like to address them all at this time.  However, given the compressed trial schedule, the Commission has narrowed this trial brief to address four of Contempt Defendants' fundamentally incorrect or incomplete assertions of law.  First, the FTC need not prove individualized harm to meet its burden for full compensation, only a pattern or practice of violations.  Second, to meet the high burden of proof on an impossibility defense, Contempt Defendants must show that they have taken all reasonable steps to comply – which they clearly have not.  Third, Contempt Defendants' substantial compliance defense fails both because they failed to take all reasonable steps to comply with the 1999 Order and because their numerous and pervasive violations relate to the Order's key conduct prohibitions.  Finally, Contempt Defendants misstate the law of contempt remedies, erroneously arguing that if their order violations have ceased, the court cannot find them in contempt and impose compensatory sanctions.

-1-

I.   **The FTC Need Not Prove Individualized Injury To Obtain Full Compensatory Relief.**

Contempt Defendants ask the Court to find that "[t]he FTC failed to meet its burden of proof" because it did not show that each and every charge placed on a consumer's phone bill was unauthorized.  ECF, ¶ 198.  This misstates the law, which universally holds that the FTC need not prove harm on a consumer-by-consumer basis.  Indeed, all the FTC need show is that Contempt Defendants "engaged in a pattern or practice of contemptuous conduct" in order for a presumption to arise that *all* consumers subjected to the conduct have been injured, and, as a result, Contempt Defendants' gross receipts derived from the contempt may be used as a baseline for a compensatory sanction award.  *See Fed. Trade Comm'n v. Kuykendall*, 371 F.3d 745, 764 (10th Cir. 2004) (en banc) (citing *Fed. Trade Comm'n v. Figgie, Inc.*, 994 F.2d 595, 605-06 (9th Cir. 1993); *Fed. Trade Comm'n v. Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312 (8th Cir. 1991)); *see also id.* at 765 (*citing McGregor v. Chierico*, 206 F.3d 1378, 1387-88 (11th Cir. 2000); *Fed. Trade Comm'n v. Gill*, 183 F. Supp. 2d 1171, 1185-86 (C.D. Cal. 2001)); *Fed. Trade Comm'n v. Trudeau*, 579 F.3d 754, 773 n.15 (7th Cir. 2009) (FTC not required to provide individualized proof of consumer reliance or dissatisfaction).

The reason the FTC is not required to prove individualized harm is axiomatic:

> It would be virtually impossible for the FTC to offer such proof, and to require it would thwart and frustrate the public purposes of FTC action.  ***This is not a private fraud action***, but a government action brought to deter unfair and deceptive trade practices and to obtain restitution on behalf of a large class of defrauded investors.  It would be ***inconsistent with the statutory purpose*** for the court to require proof of subjective reliance ***by each individual consumer***.

*Fed. Trade Comm'n v. Nat'l Bus. Consultants, Inc.*, 781 F. Supp. 1136, 1142 (E.D. La. 1991) (quoting *Sec. Rare Coin*, 931 F.2d at 1316).  Indeed, in *Nat'l Bus. Consultants*, the only case in the Fifth Circuit to consider the issue, the court, relying on long-standing FTC precedent, expressly rejected the argument that an individualized showing of harm was required.  *Id.* at

1141-42 (citing *Sec. Rare Coin*, 931 F.2d at 1316; *Fed. Trade Comm'n v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989); *Fed. Trade Comm'n v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282, 1291 (D. Minn. 1985); *Fed. Trade Comm'n v. Int'l Diamond Corp.*, 1983-2 Trade Cas. (CCH) ¶ 65,725 at 69709, 1983 WL 1911, at *6-7 (N.D. Cal. Nov. 8, 1983)).  Rather, the court found that the FTC met its burden by demonstrating a "pattern or practice" of behavior that violated the FTC Act.  *Id.*

This precedent also demonstrates that the two cases cited by Contempt Defendants, *Midland Pizza, LLC v. Southwestern Bell Telephone Co.*, 277 F.R.D. 637, 642 (D. Kan. 2011) and *Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, 654 F.3d 728, 738 (7th Cir. 2011), are inapposite.  *See* ECF 155, ¶ 198.  Each of those cases involved private class actions, which as the court found in *Nat'l Bus. Consultants*, are distinguishable from, and susceptible to a different standard of proof than, a government action brought by the FTC to end unfair or deceptive practices.  *See* 781 F. Supp. at 1141-42; *see also McGregor v. Chierico*, 206 F.3d at 1388 (contempt).  Indeed, in *Lady Di's* , the Seventh Circuit cited with approval *Federal Trade Commission v. Inc21.com*, 745 F. Supp. 2d 975, 982 (N.D. Cal. 2010), a cramming case in which the FTC did not present individualized evidence of harm.  *See Lady Di's* 654 F.3d at 733 (citing FTC survey demonstrating that "nearly 97% of one crammer's 'customers' had not agreed to the services for which they were charged, while only 5% of those customers even noticed that they had been billed").

Here, there is ample evidence demonstrating that Contempt Defendants engaged in a pattern or practice of unauthorized billing.  *See, e.g.,* ECF 157, ¶¶ 43-81 (describing thousands of complaints for unauthorized billing relating to and termination by Verizon of Myiproducts for cramming); *id.*, ¶ 160 (describing astronomically high chargeback rates for Landeen company

products); *id.*, ¶¶ 139-141 (describing BSG monitoring of phone calls of consumers' complaining of unauthorized charges relating to Landeen company products).

Thus, the FTC has met its burden of showing that Contempt Defendants engaged not in "isolated instances of contumacy," but rather in "a pattern or practice of contemptuous conduct" that justifies a compensatory award in the amount of gross revenues, less refunds and returns, that Contempt Defendants received as a result of the unauthorized billings. *See Kuykendall*, 371 F.3d at 764.

## II. Contempt Defendants' Impossibility Defense Must Fail Because They Cannot Show They Took All Reasonable Steps To Comply With The 1999 Order.

Contempt Defendants argue that their violations of the 1999 Order should be excused because compliance is "impossible." *See* ECF 155, ¶ 200. In support of their argument, they cite *United States v. Rylander*, 460 U.S. 752, 757 (1983), for the correct proposition that "[w]here compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action." *Id.*; *see also id.* ("[I]n a civil contempt proceeding, a defendant may assert a ***present inability*** to comply with the order in question.") (citing *Rylander*, 460 U.S. at 757) (emphasis original).[1] However, Contempt Defendants conveniently omit the standard that applies to a defendant invoking the defense, which they cannot meet.

Specifically, a defendant who invokes impossibility bears "the burden of producing credible evidence in support of [the] defense." *United States v. Sorrells*, 877 F.2d 346, 349-50 (5th Cir. 1989) (citing *Rylander*, 460 U.S. at 757-61). Moreover, the burden on the party asserting the defense is "particularly high." *See Sec. & Exchange Comm'n v. Resource Dev. Int'l, LLC*, 217 F. App'x 296, 299 (5th Cir. Feb. 6, 2007) (citing *Fed. Trade Comm'n v.*

---

[1] *Rylander* uses the terms "impossibility" and "present inability to comply" interchangeably. *See* 460 U.S. at 757.

-4-

*Affordable Media, LLC*, 179 F.3d 1228, 1241 (9th Cir. 1999); *see also Fortin v. Comm'r of Mass. Dep't of Pub. Welfare,* 692 F.2d 790, 796 (1st Cir. 1982) (calling burden of demonstrating impossibility "difficult to meet"); *Glover v. Johnson*, 934 F.2d 703, 708 (6th Cir. 1991) (same); *In re Galindo*, 2006 WL 2168125, at *2 (S.D. Tex. July 31, 2006) (same).[2]

Indeed, in order to even invoke the defense, a party must demonstrate that it has exhausted "all reasonable efforts to comply" with the order. *See Smith v. Smith*, 194 F.3d 1309, 1999 WL 766991, at *2 (5th Cir. Sept. 2, 1999) (rejecting claim of impossibility where defendant failed to explain why documents required for production could not be obtained from third party); *see also Euclich v. United States*, 2004 WL 1844821, at *3 (N.D. Tex. Aug. 18, 2004).

Here, the evidence is clear that Contempt Defendants did not take all reasonable steps to comply with the 1999 Order. Indeed, there are at least two obvious measures Contempt Defendants could have taken in an effort to comply with the Order. First, they could have terminated billing for companies that consistently failed to meet their cramming complaint thresholds. ECF 157, ¶¶ 50-77 (recounting BSG's and ESBI's failure to terminate billing for the Landeen companies' enhanced services products despite being on notice that complaint levels for those products persistently exceeded their thresholds). Second, they could have chosen not to bill for enhanced services at all.[3] Having failed to take all reasonable steps to comply with the

---

[2] To the extent that Contempt Defendants argue that compliance with the consent order was impossible *ab initio*, the Fifth Circuit has suggested that the impossibility defense may not be invoked at all. Specifically, as the court found in *Sorrells*, "we find it difficult to believe that [a party] would have voluntarily signed an order" with which it could not comply. *See* 877 F.2d at 349.

[3] To the extent that Contempt Defendants argue that their non-compliance was unavoidable because the enhanced services billing market is susceptible to fraudulent billings, it was their choice to bill for such services. Accordingly, an impossibility defense must fail. *See Eulich*, 2004 WL 1844821, at *3 (holding that a contempt defendant "cannot benefit from a situation that

1999 Order, Contempt Defendants may not invoke the impossibility defense.  *See Smith*, 194 F.3d 1309, 1999 WL 766991, at *2.

Moreover, even if Contempt Defendants were entitled to invoke the defense, it is evident that they are unable to come forward with the "credible evidence" needed to prove their bare claim of impossibility.  Indeed, in their 190 proposed Findings of Fact, Contempt Defendants do not allege anything that would form the basis of an impossibility claim, let alone provide evidentiary support for such a claim.  *See generally* ECF 155 and 172.

### III. Contempt Defendants Do Not Meet The Standard To Demonstrate Substantial Compliance.

Contempt Defendants ask the Court to excuse their order violations because they "substantially complied with the 1999 Order."  ECF 155, ¶ 200.  The Fifth Circuit, citing authority from the D.C. Circuit, has recognized substantial compliance as a defense to contempt.  *See U.S. Steel Corp. v. United Mine Workers*, 598 F.2d 363, 368 (5th Cir. 1979) (citing *Washington Metropolitan Area Transit Auth. v. Amalgamated Transit Union*, 531 F.2d 617, 621 (D.C. Cir. 1976)).  Although the Fifth Circuit has not articulated a specific standard for substantial compliance, courts recognizing the defense have found that, at a minimum, a defendant must show that it "took all reasonable steps within [its] power to comply with the court's order."  *See, e.g., Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1017 (D.C. Cir. 1997) (alterations original); *see also Gen. Signal Corp. v. Donnallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986); *Satyam Computer Servs., Ltd. v. Venture Global Eng'g, LLC*, 323 F. App'x 421, 430 (6th Cir. 2009).

---

he himself created") (collecting cases, including *United States v. Bryan*, 339 U.S. 323, 330-31 (1949)); *see also United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980) ("Where the person charged with contempt is responsible for the inability to comply, impossibility is not a defense to the contempt proceedings.").

Fifth Circuit precedent is consistent with this minimum requirement. For example, in *U.S. Steel Corp.*, the order required a union and its officials to take reasonable steps to inform its members of the issuance and requirements of the court's order. *See* 598 F.2d at 367-368. The Fifth Circuit upheld the district court's finding of contempt on the grounds that the union's failure to attempt notification of over three-quarters of its members demonstrated a lack of substantial compliance. *Id.* at 368; *see also Whitfield v. Pennington*, 832 F.2d 909, 914 (5th Cir. 1987) (finding that corporation's payments to pension plan did not constitute substantial compliance by trustees who were under separate payment obligation); *Police Ass'n v. City of New Orleans*, 100 F.3d 1159, 1172-73 (5th Cir. 1996) (rejecting substantial compliance defense where city's actions were undertaken "in clear contravention" of district court's order); *see also Mendoza v. Regis Corp.*, 2005 WL 1950118, at *4 (W.D. Tex. Aug. 11, 2005) (rejecting substantial compliance defense where efforts to comply with order were "casual"). As discussed above, *see* Section II, *supra*, there is no question that Contempt Defendants did not take all reasonable steps to comply with the 1999 Order. Accordingly, their defense of substantial compliance, like their impossibility defense, must fail.

In addition, many circuits also limit the substantial compliance defense by only allowing the defense to excuse "technical" or "inadvertent" violations. *See e.g., Gen. Signal Corp.*, 787 F.2d at 1379; *Robin Woods, Inc. v. Robin Woods*, 28 F.3d 396, 399 (3d Cir. 1994). Courts have found a number of circumstances where order violations cannot be found to be technical or inadvertent, including where the order's core conduct prohibitions have been violated and where the violations were numerous or pervasive. *See, e.g., Haldermann v. Pennhurst State Sch. & Hospital*, 154 F.R.D. 594, 605-09 (E.D. Pa. 1994) (finding no substantial compliance where, even though contempt defendants partially complied with order, they violated key conduct

prohibitions of order over a nine-year period); *Al-Adahi v. Obama*, 672 F. Supp. 2d 114, 117 (D.D.C. 2009) (finding that, where order required testimony of witness to be videotaped, failure to videotape testimony was not "inadvertent," despite being the result of "oversight and miscommunication"); *On-Command v. Lodgenet Entertainment Corp.*, 976 F. Supp. 917, 922-23 (N.D. Cal. 1997) (reversing finding of "technical violation" where information obtained in discovery was used to file lawsuit in violation of protective order prohibiting use of confidential information, despite fact that contemnor took substantial steps to prevent public disclosure of information).

The Fifth Circuit cases cited above are also consistent with this line of precedent. For example, in the *City of New Orleans* case, the Fifth Circuit found that actions taken in "clear contravention" of the core conduct prohibitions of the order did not constitute "substantial compliance" with the order. 100 F.3d at 1172-73. Moreover, in *Mendoza*, the court noted the fact that violations of the order persisted more than three years after its entry in holding that defendants were not entitled to benefit of substantial compliance defense. 2005 WL 1950118, at *4.

Here, Contempt Defendants' violations of the 1999 Order are not technical or inadvertent. Specifically, by billing consumers for enhanced services without their authorization, by misrepresenting that those charges were authorized, and by billing on behalf of vendors who failed to clearly and conspicuously disclose the terms of the enhanced services, Contempt Defendants have violated the key conduct prohibitions designed to protect consumers. Moreover, because these violations took place over a four year period (2006-2010) and caused injury to hundreds of thousands of consumers, they are both pervasive and numerous. Accordingly, Contempt Defendants' substantial compliance defense must fail.

## IV.     Contempt Defendants Blatantly Misstate The Law Of Contempt Remedies.

Contempt Defendants argue that the present action is moot because their violative conduct has ceased.  *See* ECF 155, ¶ 203.  Contempt Defendants' blatantly misstate the law.  Specifically, the Supreme Court has made clear:

> Judicial sanctions in civil contempt proceedings, may in a proper case, be employed for *either or both* of two purposes:  to coerce the defendant into compliance with the court's order, and *to compensate the complainant for losses sustained*.

*United States v. United Mine Workers*, 330 U.S. 258, 303-04 (1947) (emphasis added); *see also American Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000).  Neither the Supreme Court nor the Fifth Circuit has held that ongoing, violative conduct, or the reasonable expectation of future recurrences are a prerequisite to the imposition of compensatory sanctions.

Indeed, the Fifth Circuit expressly held the opposite.  *See Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 400-01 (5th Cir. 1987) ("If, however, the civil contempt proceeding is *compensatory* in nature, the termination of the underlying action out of which the contempt hearing arose *does not moot* the contempt proceeding.") (citing *Backo v. Local 281, United Brotherhood of Carpenters & Joiners*, 438 F.2d 176, 812 (2d Cir 1970)) (emphasis added); *see also People's Housing Dev. Corp. v. City of Poughkeepsie*, 425 F. Supp. 482, 495 (S.D.N.Y. 1976) ("There is a vital distinction between coercive contempt proceedings, which do not survive the abatement of the original actions out of which they arise, and compensatory contempt proceedings, which do survive.").  In fact, the Fifth Circuit has affirmed compensatory sanction awards, even in the absence of ongoing contempt.  *See, e.g., American Airlines*, 228 F.3d at 585-86 (upholding $45.5 million compensatory contempt sanction imposed after

violative conduct has ceased); *Petroleos Mexicanos*, 826 F.2d at 400-01 (affirming compensatory fine imposed 15 months after challenged conduct had terminated).[4]

Dated: November 1, 2013

Respectfully Submitted,

FEDERAL TRADE COMMISSION

By:    */s/ Jonathan Cohen*

(202) 326-2167 (Moore);
-3113 (Wolfe); -3444 (Waldrop);
-2551 (Cohen); -2558 (fax)
rmoore@ftc.gov; dwolfe@ftc.gov;
swaldrop@ftc.gov; jcohen2@ftc.gov

Robin L. Moore (DC Bar #987108)
Douglas V. Wolfe (DC Bar #437476)
Sarah Waldrop (MD Bar) (numbers not issued)
Jonathan Cohen (DC Bar #483454)
Attorneys for Federal Trade Commission
600 Pennsylvania Ave., N.W., Suite M-8102 B
Washington, D.C. 20580
Admitted *Pro Hac Vice*

---

[4] Unsurprisingly, in the face of this controlling precedent, the out-of-circuit cases cited by Contempt Defendants to support their specious conclusion are inapplicable. The first, *Musalli Factory for Gold & Jewelry Co. v. New York Financial, LLC,* 2010 WL 2382415, *3-4 (S.D.N.Y. June 14, 2010), is a case involving the imposition of a coercive sanction, not a compensatory sanction. The second, *Sunbeam Corp. v. Golden Rule Appliance Co.*, 252 F.2d 467, 469-71 (2d Cir. 1958), found that an award of a compensatory sanction was appropriate, but reversed the amount of the sanction as being unsupported by the evidence in the record. The third, *Halet v. Wend Investment Co.*, 672 F.2d 1305, 1307-1308 (9th Cir. 1982), is not a contempt case at all but deals with the concept of mootness in the context of a housing discrimination action. Moreover, Contempt Defendants miscite the holding of *Halet*. Specifically, Contempt Defendants argue that a case is moot if "there is no reasonable expectation" that the violation will recur. *See* ECF, ¶ 203. While that is one prong of the test for mootness articulated in *Halet*, there is a second that Contempt Defendants cannot meet: "(2) interim relief or events have ***completely eradicated*** the effects of the violation." *Halet,* 672 F.2d at 1308 (emphasis added). Here, the hundreds of thousands of consumers who have been billed without their authorization remain uncompensated. Accordingly, the effects of the violation have not been eradicated, and the case against Contempt Defendants is not moot, even under *Halet.*

-10-

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of November, 2013, I electronically filed the foregoing Federal Trade Commission's Trial Brief with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Dina M. Cox
Robert Baker
Lewis Wagner, LLP
501 Indiana Avenue, Suite 200
Indianapolis, Indiana 46202

Ricardo G. Cedillo
Derick J. Rodgers
Mark W. Kiehne
Davis, Cedillo & Mendoza, Inc.
McCombs Plaza
755 E. Mulberry Ave., Suite 500
San Antonio, Texas 78212-3149

                    By:      */s/ Jonathan Cohen*
                            Robin L. Moore (DC Bar #987108)
                            Douglas V. Wolfe (DC Bar #437476)
                            Sarah Waldrop (MD Bar – numbers not issued)
                            Jonathan Cohen (DC Bar #483454)
                            Attorneys for Federal Trade Commission
                            Admitted *Pro Hac Vice*
                            Telephone:   (202) 326-2167 (Moore)
                                                (202) 326-3113 (Wolfe)
                                                (202) 326-3444 (Waldrop)
                                                (202) 326-2551 (Cohen)
                            Fax:  (202) 326-2558
                            Email: rmoore@ftc.gov
                                       dwolfe@ftc.gov
                                       swaldrop@ftc.gov
                                       jcohen2@ftc.gov