UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 5:98-cv-00629-FB-HJB |
| HOLD BILLING SERVICES, Ltd.; HBS, Inc.; AVERY COMMUNICATIONS, INC.; VETERANS OF AMERICA ASSOCIATION, Ltd.; THOMAS M. LYONS; KEITH C. CALIL; and MILFORD H. BALABAN, | ) |
| Defendants. | ) |

## RESPONDENTS' TRIAL BRIEF REGARDING INADMISSIBILITY OF HEARSAY CONSUMER STATEMENTS

The FTC asks the Court to hold Respondents in contempt for the alleged unauthorized billing of 1,160,947 consumers over a six year period of time. It is the FTC's burden to prove by clear and convincing evidence that these consumers were charged for Landeen Entity products and services they did not authorize. Notwithstanding the FTC's burden of proof and the vast investigatory resources of the United States Government, the FTC does not offer a single verified consumer statement, does not intend to call a single consumer to the witness stand, did not conduct a survey of consumers who were allegedly crammed, and did not identify an expert witness to opine on the consumer sign-up process. Instead, on October 23, 2013, more than 2 ½ months after the close of discovery and just thirteen (13) days before the November 4, 2013 evidentiary hearing, the FTC notified Respondents that it planned to offer into evidence several

1

unverified, out-of-court consumer statements under Federal Rule of Evidence 807, the residual exception to the hearsay rule.[1] The FTC proffers the following hearsay consumer statements:

- PX-1 to PX-39 (complaints to regulatory agencies);

- PX-44, PX-46 to PX-49, PX-56, PX-58, PX-132, PX-219 to PX-220, PX-318 to PX-323, PX-341 to PX-343 (summaries of customer service calls monitored by Respondents); and,

- PX-127 (transcripts at A-C), PX-129 (transcripts at A-B), PX-150 (transcripts at A-C), PX-155 (transcripts at A-C), PX-160 (transcript at A), PX-168 (transcript at A), PX-171 (transcripts at A-C), PX-173 (transcripts at A-B), PX-176 (transcript at A), PX-180 (transcripts at A-C), PX-243 (transcript at A), and PX-244 (transcripts at A-C) (recordings of monitored customer service calls).

All of these consumer statements are either consumer reports to government agencies, notes of customer service calls, summaries of recorded customer service calls, or recordings of customer service calls. These unsupported and largely unverified consumer statements constitute the most obvious form of inadmissible hearsay,[2] which is defined by the Federal Rules of Evidence as any statement that:

1. the declarant does not make while testifying at the current trial or hearing; and,

2. the party offers in evidence to prove the truth of the matter asserted in the statement.

*See* F.R.E. 801(c).

---

[1] *See* 10/23/2013 email from Waldrop to Cox, Baker, & Rodgers ("We are writing to formally let you know that we intend to seek admission of the statements in the complaints under Federal Rule of Evidence 807. Respondents object to the admission of the consumer statements identified in the FTC's 10/23/2013 Rule 807 notice. However, there are additional consumer statements listed on the FTC's Final Exhibit list that were not included in the Rule 807 notice sent on October 23, 2013. Respondents have objected to those exhibits (*see* Dkt. 181), but respectfully reserves the right to offer additional argument as to those consumer statements in the event the FTC provides notice of its intent to offer that evidence.

[2] Hearsay is inadmissible "unless provided for by (1) a federal statute, (2) the federal rules of evidence, or (3) other rules prescribed by the Supreme Court." *See* F.R.E. 802.

The proffered consumer statements are all hearsay at their very core, and they are often hearsay within hearsay or double hearsay. They are the out-of-court statements of the declarant-consumers themselves (in the case of an audio recording), or they are another person's summary or impression of select aspects of what that person believes they heard while listening to a customer service call that took place in the past (in the case of a monitored customer service call). Acknowledging that these statements are hearsay, the FTC seeks to admit them pursuant to the infrequently used "residual" exception to the rule against hearsay – Federal Rule of Evidence 807. But these consumer statements should not be admitted under Rule 807 or any other method.

### **CONTROLLING FIFTH CIRCUIT PRECEDENT FOR THE RARE AND EXCEPTIONAL USE OF THE RESIDUAL EXCEPTION**

There are four requirements for admission of hearsay under the residual exception:

(1) the statement has equivalent circumstantial guarantees of trustworthiness;
(2) it is offered as evidence of a material fact;
(3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and,
(4) admitting it will best serve the purposes of these rules and the interests of justice.

*See* F.R.E. 807. Rule 807 specifically requires that all four evidentiary safeguards be met before introduction of the hearsay. The consumer statements proffered by the FTC do not fulfill three of the four requirements of Rule 807 as interpreted by controlling Fifth Circuit precedent.[3]

In the Fifth Circuit, the residual hearsay exception is extremely limited and is "used only rarely, in truly exceptional cases." *United States v. Phillips*, 219 F.3d 404, 419, n. 23 (5th Cir. 2000) (quoting *United States v. Thevis*, 655 F.2d 616, 629 (5th Cir. 1982)) (court declined to

---

[3] Respondents do not dispute that the second requirement of Rule 807 is met. The FTC is offering consumer statements as evidence of a material fact in an attempt to show violation of the 1999 Order. Respondents contend the FTC is unable to carry its burden with respect to the remaining three requirements to invoke Rule 807.

admit hearsay under Rule 807 finding declarant had motive to lie when she made the statement). "The proponent of the statement bears a heavy burden to come forward with indicia of both trustworthiness and probative force." *United States v. Washington*, 106 F.3d 983, 1001-02 (D.C. 1997). In order to find a statement trustworthy, a court must find that the declarant of the … statement 'was particularly likely to be telling the truth when the statement was made.'" *Id*. *See also Cook v. Miss. Dep't of Human Servs*., 108 Fed. Appx. 852, 856 (5th Cir. Ct. App. 2004) (finding that a statement of opinion or subjective belief is "not one of those uncommon circumstances warranting an exception to the hearsay rule under Rule 807"). The heavy burden on the FTC to admit its proffered consumer statements via the residual exception is justified. Courts are rightfully reluctant to apply Rule 807 because the Rule undercuts the very purpose of the rule against hearsay – to ensure trustworthiness of evidence. *Phillips*, 219 F.3d at 419, n.23.

The FTC cannot meet its heavy burden of demonstrating this is an "exceptional" case where the consumer statements are neither trustworthy nor probative. Nor can the FTC demonstrate that this evidence is more probative than any other evidence the FTC could have obtained through reasonable efforts. Because these consumer statements have no probative value and Respondents cannot cross-examine pieces of paper, admitting them as representative of the consumer experience of millions is not in the interest of justice.

### ARGUMENT: THE FTC CANNOT MEET ITS BURDEN TO SHOW THAT ADMISSION THROUGH RULE 807 IS JUST

**A.    Hearsay Consumer Statements Not Trustworthy.**

As Fifth Circuit precedent instructs, trustworthiness is the key factor, or "lodestar," in any Rule 807 inquiry. The FTC carries a "heavy burden" to come forward with indicia that the consumer statements are trustworthy. There must have been no motivation to lie. *See United States v. Phillips*, 219 F.3d at 419. And, the determination of trustworthiness "cannot stem from

other corroborating evidence" outside of the statement in question. *El-Mezain*, 664 F.3d at 498 (citing *Idaho v. Wright*, 497 U.S. 805, 820-22 (1990) (analyzing the intersection of the residual hearsay exception and the Confrontation Clause of the Sixth Amendment).

The Fifth Circuit recently examined the residual hearsay exception in the context of a case involving alleged material aid to a foreign terrorist organization (i.e., Hamas). *El-Mezain*, 664 F.3d at 497-501. In *El-Mezain,* the federal government tried to introduce Palestinian Authority ("PA") documents seized by the Israeli military from PA headquarters. *Id*. The documents contained information regarding the financial funding of Hamas, affiliates of Hamas, and activists within the terrorist movement. *Id*. While the trial court found "sufficient indicia of trustworthiness" because the documents were not prepared for litigation purposes and were on letterhead, the appellate court disagreed. *Id*. The Fifth Circuit stressed that a "proponent of the statement bears a heavy burden to come forward with indicia of both trustworthiness and probative force." *Id*. (quoting *Phillips*, 219 F.3d at 419 n.23). The court also underscored that trustworthiness is "the lodestar of the residual hearsay exception analysis." *Id*. at 498 (quoting *United States v. Walker*, 410 F.3d 754, 758 (5th Cir. 2005)). Thus, even in the context of a potential threat to national security, the Fifth Circuit held in *El-Mezain* that the residual exception ***could not be used.*** *Id.* at 497-501.

In reaching its conclusion, the *El-Mezain* court found for purposes of Rule 807 that "courts frequently compare the circumstances surrounding the statement to the closest hearsay exception." *El-Mezain*, 664 F.3d at 498 (quoting 2 Kenneth S. Broun, McCormick on Evid. § 324 (6th ed.)). The court examined the guarantee of trustworthiness found in the public records exception and concluded that there was no similar guarantee of trustworthiness with respect to the PA documents. In *El Mezain*, the PA was not recording its own activity in the

5

documents (which grants some indicia of reliability), but rather was recording the activities of third parties, including Hamas. *Id*. at 500. The same reasoning applies here – Respondents and the other recipients of consumer statements may, as part of their business activities, document that a complaint or inquiry was made. But, these parties have no ability to guarantee the trustworthiness of the substance of consumer statements, which are often made with the motive of financial gain. In this case, there is no applicable or nearly applicable exception, which is presumably why the FTC has resorted to the rare and exceptional residual exception.

Notably, the FTC failed to mention *El-Mezain,* the most recent binding Fifth Circuit precedent on the application of Rule 807. Instead, the FTC cited to ten (10) cases to support its position that, because other courts have allowed consumer hearsay statements into evidence under Rule 807, this Court should do so as well. *See* Dkt. 186, pp. 4-5. The FTC has not offered the Court an analysis or even a cursory discussion of those cases. A review of them exposes important distinctions demonstrating that no other court has admitted consumer hearsay statements into evidence under Rule 807 that are even remotely as untrustworthy as the consumer statements are in this case.

Of the ten (10) cases the FTC cites to persuade this Court to admit consumer hearsay, seven (7) of the courts deciding those cases required some sort of verified evidence of consumer complaints, either by live testimony or sworn declaration, when determining the admissibility of unverified statements under the residual hearsay exception. *See United States v. Ismoila*, 100 F.3d 380, 393 (5th Cir. 1996); *FTC v. Kuykendall*, 312 F.3d 1329, 1343 (10th Cir. 2002) *vacated on other grounds*, 371 F.3d 745, 767 (10th Cir. 2004) (en banc); *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 576 (7th Cir. 1989); *FTC v. Direct Benefits Group, LLC*, No. 6:11-cv-1186-Orl-28TBS, 2012 U.S. Dist. LEXIS 162696, at *3-6 (M.D. Fla. Nov. 14, 2012); *FTC v. Zamani*, No.

SACV 09-0977-DOC, 2011 U.S. Dist. LEXIS 60913, at *1-3 (C.D. Cal. June 6, 2011); *FTC v. Jordan Ashley, Inc.*, No. 93-2257-CIV-NESBITT, 1994 U.S. Dist. LEXIS 7494, at *10 (S.D. Fla. Apr. 5, 1994); *FTC v. Kitco*, 612 F. Supp. 1282, 1294-95 (D. Minn. 1985). Three (3) of those courts **only** admitted statements that were verified under the penalties of perjury. *See Kuykendall*, 312 F.3d at 1343; *Amy Travel*, 875 F.2d at 576; *Kitco*, 612 F. Supp. at 1294. The other four (4) courts only admitted unverified statements alongside statements that were made under oath, or only as corroborative of sworn or live testimony that was already in evidence. *See Ismolia*, 100 F.3d at 393; *Direct Benefits*, 2012 U.S. Dist. LEXIS 162696, at *3-6; *Zamani*, 2011 U.S. Dist. LEXIS 60913, at *1-3; *Jordan Ashley*, 1994 U.S. Dist. LEXIS 7494, at *10 (S.D. Fla. 1994); *Kitco*, 612 F. Supp. at 1294.

Here, the vast majority of consumer statements the FTC seeks to admit are not verified under the penalties of perjury. Moreover, the FTC has offered no live consumer testimony or verified consumer declarations which the unverified statements could corroborate.

Moreover, the FTC failed to apprise this Court that its most recent attempt at admission of consumer hearsay under Rule 807 was flatly rejected just a few weeks ago in *FTC v. E.M.A. Nationwide, Inc.*, 2013 U.S. Dist. LEXIS 120914 (N.D. Ohio Aug. 26, 2013). The *E.M.A.* court denied the FTC's request to admit unsworn consumer complaints into evidence because they lacked circumstantial guarantees of trustworthiness. *Id.* at *5-9. The court found that, while the complaints were submitted to the government or non-profit organizations and most consumers made their best efforts to provide accurate information, the consumers made the complaints ***"with hopes of receiving some type of refund or other financial benefit."*** *Id*. at *8 (emphasis added). In addition, the court found that the unverified complaints (while not created in

7

anticipation of litigation) were created "with knowledge that litigation was possible." *Id*. These circumstances, taken together, warranted exclusion of the evidence. *Id*.

Importantly, *E.M.A. Nationwide* distinguished other hearsay exceptions, like Rule 803(4) that allows for statements made for medical diagnosis (because it would be unlikely a declarant would lie about her health to gain an advantage in litigation) finding "these types of guarantees of truthfulness "are simply not present in the consumer complaints." *Id*. Because the consumer complaints were not trustworthy and were unverified, the court denied the FTC's motion to admit them. *Id*. *See also AAMCO Transmissions, Inc. v. Baker*, 591 F.Supp.2d 788, 799 (E.D.Pa. 2008) (holding audio recordings were untrustworthy because they were not made under oath, not based on personal knowledge, not subject to cross-examination, and not spontaneous).

For these very same reasons, the FTC's proffered consumer statements lack the basic guarantees of trustworthiness and must be precluded from evidence. Like the consumer complaints in *E.M.A. Nationwide*, the consumer statements here are often made with the hopes of receiving a refund or some other type of financial benefit. *See* PX 5: ("I am requesting this reimbursement back since July of 2007, in the amount of $669.90."); PX 56: ("The customer wanted to know how to get all of the charges taken off…"); PX 319: (credit requested by several customers). These consumers had every incentive to be less than truthful as to whether the charges were previously authorized because they were aiming to get their money back. They may have signed up for the service and were experiencing buyer's remorse. *See* Ex. R-243, Expert Report of Dr. Robert Rauschenberger, p. 16 ("[C]onsumers may subscribe to a service wittingly and intentionally, without committing an error, and yet complain about having been deceived. The literature on so-called cognitive dissonance describes instances in which a

consumer makes a purchase and later experiences remorse over his or her purchase. This phenomenon has been referred to as 'buyer's regret.'").

Also, Respondents' witnesses who have worked in customer service since the 1990s are ready to testify to this Court about their customer service experience. These witnesses (Blanca DeLeon, Melissa Mitchell, Denise DeSilva, and Roberta Trevino) will all tell the Court the same thing: Consumers will say anything to get a refund. These witnesses will explain that often consumers call in to complain that they do not recognize a charge on their bill, but when reminded about the product or service and/or the sign-up process, the consumer will often come to recognize the charge, or they will acknowledge that a member of their household purchased the product or service.[4]

Or, when confronted with the proof of authorization – either a recording of the consumer ordering the service or a letter of authorization containing personal information the consumer disclosed during the sign-up process – the consumer often changes the reason they are calling for a refund. Respondents' customer service witnesses will tell this Court that, when confronted with a consumer disputing a charge, the customer service representatives do not conduct an investigation to determine whether the consumer is telling the truth. In fact, the evidence will show that customer services representatives are often instructed to issue a credit or refund to satisfy the consumer, no matter the reason the consumer asks for a refund.

The hurdle to establish trustworthiness is necessarily high and for good reason. Even consumer statements verified under oath multiple times – after testing and confrontation – turn

---

[4] See e.g., PX-215 (1st call) (When given the name on the account, consumer stated "…that's my brother" and then asked about the features of the voicemail service. Consumer did not request that service be cancelled nor that any credit be given.); PX-215 (2nd call) (Consumer advised that son ordered product without her permission.); PX-416 (Consumer stated that husband ordered service.); PX-173-A (Consumer stated that her daughter ordered service but does not live at her house.); PX-244-B (Consumer stated that her step-daughter signed up for the service and she requested refund.); PX-321 (Consumer stated that former employee ordered the service.)

out to be untrue. *See Lady Di's, Inc., v. Enhanced Servs. Billing, Inc.*, 654 F.3d 728 (7th Cir. 2011) ("The complaint alleged that plaintiff `never requested, authorized, or even knew about' the services for which defendants charged it. The evidence, however, turned out differently. Both defendants produced evidence proving that the plaintiff actually ordered the services in question.")

The unsworn consumer statements the FTC seeks to admit in this case are also untrustworthy because a good portion of the FTC's proffered evidence is not even directly from the consumer, but rather are records or summaries of customer service calls. *See, e.g.,* PX 318 (notes taken from five phone conversations); PX 319 (same); PX 320 (same). Respondents' customer service witnesses can explain to this Court that these types of calls were chosen to be monitored and summarized in an effort to improve customer service. The calls selected for summarization are those longer in duration, as longer calls are more likely to involve a dispute. So, the calls chosen will necessarily be skewed toward complaints vs. mere inquiries. When these types of calls are summarized, the person making the summary is looking for specific information and recording that information only to use to improve customer service protocols. As a result, the summary is not an accurate or complete depiction of the consumer's call at all, but rather a collection of pre-determined data developed with the objective of detecting and resolving customer service issues. At bottom, there is no way of knowing whether these summaries properly recorded the phone call or even if the consumer calling in is who they claim are. A perfect example of how unreliable the customer service summaries are is at PX-46, which is an inadmissible hearsay (and irrelevant) communication between Respondents' employees and Cindy Landeen addressing Landeen customer service center's refund policy. The summary of the phone call does not provide the identifying billing telephone number, any name for the

purported consumer, the address of the consumer or any other identifying information. The call is merely identified as "Call #1." This summary lacks *any* showing of trustworthiness in either the information originally relayed by the consumer or by the unknown person who summarized the call. Many of the FTC's proffered consumer statements suffer from a lack of or incomplete consumer identification information. *See, e.g.,* PX 44, 46, 155, 160, 168, 176, 179, 343 (missing or incomplete information to identify consumer such as names, billing telephone numbers, addresses). These identification problems coupled with an absence of verification, a motive to lie, the high incidence of occasions where family members would authorize charges on a household landline, and the imprecise methods by which many of the consumer statements were recorded combine to create utterly untrustworthy consumer statements that cannot clear the high hurdle presented by Rule 807.

B. **Hearsay Consumer Statements Have No Probative Force, and FTC Could Have Obtained Significantly More Probative Evidence in Support of its Allegations.**

Unsworn, unverified statements of a comparative few consumers (many of whom cannot be identified) is not remotely probative of the FTC's claim that 1,160,947 consumers were duped into paying for Landeen Entity products or services. This is particularly true in this contempt action because there is no correlation between consumer statements and the alleged deceptive consumer experience that is the subject of the FTC's Motion to Show Cause. Indeed, the FTC claims consumers unknowingly signed up for the Landeen Entity products/services through "deceptive click through marketing." *See* Dkt. 55-2 at p. 10. Yet, the consumer statements proffered by the FTC do not mention a consumer experience relevant to the FTC's claims that consumers were deceived when purchasing these products through "deceptive click-through marketing." This fact alone is disastrous for the FTC's claim that these unverified claims are more probative than other evidence available to the FTC.

11

Furthermore, the FTC cannot show as required by the residual exception that these statements are *more* probative on the point for which they offered than any other evidence the FTC could have obtained through reasonable efforts. In order to show Respondents have violated the 1999 Order, the FTC needs to show consumers did not authorize the disputed charges and must do so with "clear, direct…weighty and convincing" evidence. *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995). The FTC claims it can show clearly and convincingly that consumers have not authorized these charges based upon three "indicators" related to inquiries, refunds, and usage (calling these items "indicators" is an admission that the FTC has no direct evidence). So now, at the 11th hour, the FTC is trying to extrapolate from a few generic consumer statements, a so-called "pattern" of consumers being deceived. The FTC could have (and, in fact, has in the past) attempted to prove its case through a host of other significantly more probative pieces of evidence. *See* F.R.E. 807(a)(3).

For example, the FTC could have actually called consumers to testify in Court and explain why they were allegedly deceived when signing-up for a Landeen Entity product or service through Smiley Media's advertising. Or, with its vast resources and its ability to collaborate with other law enforcement agencies, the FTC could have easily taken very short, pointed depositions or obtained recorded statements under oath from consumers who could have explained their consumer experience.[5] The FTC could have retained an expert to opine on the consumer experience and then attempted to extrapolate that opinion to other consumers. Finally, the FTC could have conducted a survey of consumers to inquire about their consumer experience

---

[5] The FTC has admitted that it had access to the consumer declarants' contact information contained in the documents, but has apparently done nothing with that information to build its case. *See* 10/23/2013 email from Waldrop (acknowledging "the particulars of the statements and the consumer declarants' names and contact information are contained in the documents"). The ability to examine witnesses through live testimony is certainly more probative than the unverified consumer statements.

and whether they were deceived. *See FTC v. Wash. Data Res.*, 2011 U.S. Dist. LEXIS 72886 (M.D. Fla. July 7, 2011) ("Although each declaration reports a similar experience and occurred under oath, no declaration presents the most probative evidence that the Commission could procure with reasonable effort. . . . The Commission shows no exceptional circumstance warranting the admission of an un-cross-examined declaration into evidence as a substitute for live testimony.").

Each of these methods of obtaining significantly more probative evidence of lack of authorization could have been undertaken, but it was not. The only conclusion as why these efforts were not undertaken is that the FTC knows that consumers, who are not under oath and who are motivated to fabricate claims for financial gain, are more likely to misrepresent that they did not authorize a charge on their phone bill.

C.  **Admission of the Hearsay Consumer Statements Is Unjust.**

Finally, the FTC cannot carry its heavy burden of showing the interests of justice are served by the admission of the consumer statements either. To the contrary, admitting the unverified hearsay would run against the interests of justice and would actually undermine the objectives of the Federal Rules of Evidence. Admission of the FTC's proffered consumer statements would permit the FTC to side-step the Federal Rules and present a one-sided version of the events that took place, while at the same time denying Respondents the opportunity to test the consumer statements through cross-examination. *See AAMCO Transmissions*, 591 F.Supp.2d at 800. If the FTC is permitted to rely solely on unverified consumer statements, Respondents would be denied the due process to which they are entitled. In a case of this magnitude where the damages sought are in excess of $50 million dollars and would effectively put Respondents out of business, Respondents should at least be permitted to cross-examine the FTC's witnesses

(including consumers who were allegedly deceived or harmed) to test the veracity of their statements.

Respondents' inability to challenge these untested, uncorroborated statements lacking the basic guarantees of trustworthiness would also hinder the Court in its ability to determine the truth in this matter. *Id.* (finding that if proffered audio-recordings were excluded, proffering party "is not left without any substantive evidence of the investigations because it could call the shoppers and investigators to testify at trial."). Because the interests of justice are not served, the consumer statements should be precluded from admission pursuant to Rule 807(a)(4).

## **CONCLUSION**

The FTC is forced to seek admission of unsworn, unreliable consumer statements under the residual hearsay exception because the consumer statements constitute the very type of evidence that the hearsay rule is designed to exclude – untrustworthy statements from out-of-court consumers. These consumer statements should not be admitted into evidence for several critical reasons. First, the vast majority of the statements are unverified. They are not made under oath. Second, the consumers making these statements were making them for the purposes of obtaining a refund -- getting their money back for a service or product that they may have signed up for, but later decided they did not want or need. Third, Respondents are unable to test the validity of the statements through cross-examination because the FTC has not designated a single consumer witness to testify. Finally, many of the statements tell only a portion of the "story" and are incomplete, particularly with respect to the ultimate resolution of the inquiry or whether the consumer received a refund. Because these statements constitute the worst form of hearsay to which the residual exception does not apply, the FTC should be precluded from offering any unverified, untested, out-of-court consumer statements as evidence.

Respectfully submitted,

By: __/s/ *Dina M. Cox*_____
Dina M. Cox, Atty No. 18590-49
dcox@lewiswagner.com
ROBERT M. BAKER, IV*
Indiana Atty No. 25471-49
LEWIS WAGNER, LLP
501 Indiana Avenue, Ste. 200
Indianapolis, Indiana 46202
Telephone: (317) 237-0500
Facsimile: (317) 237-6390
*pro hac vice

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically in compliance with Local Rule CV-5(a). As such, the foregoing document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(b)(1). Pursuant to Fed. R. Civ. P. 5(a)-(b) and Local Rule CV-5(b)(2), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on November 3, 2013.

**Douglas V. Wolfe**
**SarahWaldrop**
**Robin L. Moore**
**Jonathan Cohen**
Federal Trade Commission
600 Pennsylvania Ave., NW
Suite M-8102B
Washington, DC 20580

**Robert Shaw-Meadow**
U.S. Attorney's Office
601 N.W. Loop 410
Suite 600
San Antonio, TX 78216

By: __/s/ *Dina M. Cox*_____
Dina M. Cox, Atty No. 18590-49