IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FEDERAL TRADE COMMISSION, §
§
    Plaintiff, §
§
VS. § CIVIL ACTION NO. SA-98-CA-629-FB
§
HOLD BILLING SERVICES, ET AL., §
§
    Defendants. §

## STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT

WHEREAS Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), filed a Motion to Show Cause against the defendants (docket #65) in this case; the parties have agreed to resolve the disputes between them according to the terms and conditions presented in this Stipulated Order; and the Court, having considered the disputes presented to it, the representations of the parties by and through their counsel of record, and the agreement of the parties, and finds the relief sought should be GRANTED.

Accordingly, on the joint motion of Plaintiff and Defendants, IT IS HEREBY ORDERED, ADJUDGED, and DECREED as follows:

### FINDINGS

1.      This Court entered a valid Stipulated Final Judgment and Order for Permanent Injunction and Consumer Redress against, among others, Defendant Hold Billing Services, Ltd. and HBS, Inc. on September 22, 1999 (the "1999 Order"). After entry of the Order, Holding Billing Services changed its name to HBS Billing Services Company ("HBS") and HBS, Inc. merged into Thurston Communications Corporation (Thurston Corp.").

2.      As a result of additional business-related corporate restructuring, mergers, and acquisitions, Enhanced Services Billing, Inc. ("ESBI") and HBS became subsidiaries of BCI Acquisition, LLC ("BCI Acquisition"), a wholly-owned subsidiary of Thurston Corp.  Further corporate restructuring occurred in June 2005, such that Thurston Corp. changed its name to Billing Services Group North America, and maintained ownership of the subsidiary clearinghouses, HBS and ESBI.  The entities that comprise BSG include Billing Services Group Limited, Billing Services Group North America, Inc., BSG Clearing, HBS, ESBI, BCI and ACI Billing Services, Inc. (the "BSG Entities").  All of the BSG Entities are bound by the 1999 Order.

3.      The BSG Entities had knowledge of the contents of the 1999 Order.

4.      Section III of the 1999 Order provides that "Defendants and their Representatives are hereby permanently restrained and enjoined from billing or causing to be billed, or collecting or attempting to collect payment, directly or indirectly, from a Line Subscriber for any Telephone-Billed Transaction, unless the charge for such Telephone-Billed Transaction was expressly authorized by the Line Subscriber."

5.      On April 4, 2012, the FTC filed a Motion to Show Cause requesting that the BSG Entities be held in contempt for violation of the 1999 Order.  On March 26, 2013, the District Court conditionally granted the FTC's request that the BSG Entities show cause why they should not be held in contempt.  The ruling was subject to further consideration and recommendation of a magistrate judge.

6.      Magistrate Judge Bemporad held an evidentiary hearing from November 4, 2013 to November 14, 2013. On April 4, 2014, Magistrate Judge Bemporad issued a Revised Report and Recommendation (the "Report") recommending that the FTC's request for a finding of

2

contempt be granted in part and denied in part. The Report recommended a finding that the BSG Entities violated Section III of the 1999 Order, stating that "ESBI wrongly permitted unauthorized billing" by voicemail services operated by Cindy Landeen, and that "Landeen was billing without authorization on a large scale."

7.    The Report correctly found that BSG Entities violated Section III of the 1999 Order by causing consumers to be billed without authorization for the three Landeen voicemail products.

8.    The BSG Entities did not substantially comply with the 1999 Order.

9.    The BSG Entities' pre-billing due diligence, monthly monitoring, and testing procedures did not ensure that the billing they submitted to the local exchange carriers was actually expressly authorized. Specifically, the BSG Entities relied upon Landeen to "pre-authenticate" its own billings rather than independently authenticating that the billing information was accurate. In addition, BSG did no investigation into complaints it received from consumers about unauthorized billing, despite the fact that billing for Landeen's voicemail services tripped the BSG Entities' own customer inquiry thresholds repeatedly. BSG also relied upon Landeen for proof of authorization without verifying the veracity or accuracy of such proof.

10.    Through their violation of Section III of the 1999 Order, as described in Paragraphs 7-9, the BSG Entities are in civil contempt.

11.    The undersigned, individually and by and through their counsel, have agreed that the entry of this Order resolves all matters of dispute between them arising from their contempt request, up to the date of entry of this Order. The BSG Entities and the FTC hereby waive all rights to appeal or to otherwise challenge or contest the validity of this Order.

3

12.    The parties agree that the entry of this Order constitutes an appropriate change in circumstances to warrant superseding the 1999 Order with this Order pursuant to Federal Rule of Civil Procedure 60(b).

## DEFINITIONS

For purposes of this Order, the following definitions shall apply:

1.    **"Enhanced Services"** means products or services directly offered to any individual consumer unrelated to the completion of a call, such as web hosting, directory listings, and voicemail and email services, including the aggregation of such products or services or of the billing related thereto.  This definition expressly excludes Telecommunications Services, as defined below.

2.    **"Telecommunications Services"** means common carrier transmission, such as collect calls, third-party billed calls, and long distance services billed as monthly recurring charges, as described in the Stipulated Final Judgment and Order for Permanent Injunction entered on May 18, 2008, in *FTC v. Nationwide Connections, Inc., et al.*, Case No. 06-80180-CIV (S.D. Fla.).

3.    **"Consumer-Facing Activity"** means any activity in which Defendants are involved, directly or through an intermediary, in placing charges on any bill to consumers. Consumer-Facing Activity does not include billing for Telecommunications Services.

4.    **"Non-Consumer-Facing Activity"** means any business activity that is not Consumer-Facing Activity, as defined above.  Non-Consumer-Facing Activity does not include billing for Telecommunication Services.

5.    **"Line Subscriber"** means an individual or entity that has arranged with a Local Exchange Carrier to obtain local telephone service provided through an assigned telephone

4

number, and to be billed for such service on a monthly (or other periodic) basis. For purposes of this Order only, in cases where the Line Subscriber is an entity, including but not limited to a corporation, partnership, association, or unincorporated association, the term "Line Subscriber" shall include those individuals with authority to bind the entity. For purposes of this Order only, in cases where the Line Subscriber is an individual, the term "Line Subscriber" shall include the individual in whose name the LEC bill is issued, any adult person authorized by that individual to charge an Enhanced Service to that individual's LEC bill, and any adult person lawfully authorized to represent such individual (such as the guardian or holder of power-of-attorney).

6.    **"Local Exchange Carrier" or "LEC"** means the entity providing local telephone service from which Line Subscribers receive their telephone bill.

7.    **"Claims"** means any and all past, present and/or future claims, demands, obligations, requests, suits, actions, rights of action, liabilities, losses, damages, liens, administrative proceedings, governmental actions, settlements and causes of action, at law, equity, admiralty or otherwise, whether arising out of tort, contract, statute, regulation, assignment, subrogation or otherwise, including but not limited to those for any damage, loss, cost or expense of any kind or nature whatsoever, whether known or unknown, filed or unfiled, asserted or as yet unasserted, claimed or unclaimed, which exist or may in the future exist.

8.    The terms **"including"** and **"includes"** mean "including without limitation."

9.    The terms **"and"** and **"or"** shall be construed conjunctively or disjunctively as necessary, to make the applicable phrase or sentence inclusive rather than exclusive.

## ORDER

### I.    MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that

A.    Judgment is hereby entered in favor of the FTC and against the Defendants, jointly and severally, in the amount of $5.2 million (the "Monetary Judgment") to cover consumer redress.

B.    Defendants shall pay the Monetary Judgment to the FTC in ten (10) equal quarterly installments of $520,000.00, with the initial such payment to be made within thirty (30) days from date of entry of this Stipulated Order. Following the initial payment, the Defendants shall make a payment of $520,000.00 every ninety (90) days (the "Quarterly Payment Date"). If the Quarterly Payment Date is a Saturday, Sunday or bank holiday, the payment shall be due on the next business day. No interest shall accrue on timely payments on the Monetary Judgment; in the event of default, interest shall accrue on any late payment at the rate provided for by 28 U.S.C. § 1961. Defendants shall have the right to make prepayments at any time, and any such prepayments (both partial and full) may be made without any prepayment premium, charge or penalty. If the Defendants elect to make a prepayment, that prepayment shall be applied to the next immediate regular quarterly payment, reducing the amount of that regular quarterly payment by the amount of the prepayment.

C.    The FTC's agreement to this Stipulated Order is expressly premised upon Defendants' promise to timely make quarterly payments as described in Subsection B above. If, upon motion of the FTC, the Court finds that Defendants have defaulted on any obligation to make a quarterly payment as required by this Stipulated Order, the Court shall enter a modified judgment in favor of the FTC and against the Defendants, jointly and severally, in

6

the amount of $17 million, which the parties stipulate for purposes of this Section is one reasonable calculation of consumer injury, less any amount already paid to the FTC as described in Subsection B above.

D.    Upon entry of this Stipulated Order, the FTC releases Defendants' present and former officers, owners, directors, members, managers, and employees from any and all Claims that it may have stemming from charges to consumers' landline telephone bills through or on behalf of any third-party seller of Enhanced Services.

E.    Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

F.    The facts alleged in the Motion to Show Cause will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

G.    The facts alleged in the Motion to Show Cause establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

H.    All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Motion to Show

7

Cause. Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## II.    PROHIBITION ON ENHANCED SERVICES BILLING

**IT IS FURTHER ORDERED** that the Defendants, directly or through any corporation, subsidiary, division, or other device, are hereby permanently enjoined from billing or causing to be billed any Enhanced Service on any Line Subscriber's LEC bill or any consumer wireless telephone bill.

## III.    IMPLEMENTATION OF CERTAIN PRACTICES IN CONNECTION WITH THE PROVISION OF RADIUS INTERCONNECT SERVICES

**IT IS FURTHER ORDERED** that, when Defendants engage in Non-Consumer Facing Activity by providing RADIUS interconnect services, Defendants and their officers, agents, representatives, and employees, and all persons in active concert or participation with any one or more of them who receive actual notice of this Stipulated Order by personal service or otherwise, directly or through any corporation, subsidiary, division, or other device, shall:

A.    Offer to provide to each of their wireless carrier or other network provider customers RADIUS interconnect services that comport with the recommended RADIUS Mediation Rules found in the Wireless Broadband Alliance WRIX Standard Service Specifications: Interconnection Definition (Version 01.05), but only to the extent that the other party to the bi-lateral relationship with the entity's customer provides the data needed to comply with the recommended RADIUS Mediation Rules; and

B.    Regularly monitor data obtained in providing such RADIUS interconnect services and provide monthly reports to their wireless carrier or other network provider customers identifying the top one percent (1%) of RADIUS outbound roaming interconnect sessions by

8

data volume within the prior month's period. Such monthly reports will include clear and prominent language indicating that outbound roaming interconnect sessions containing large or unusual volumes of data could be indicative of unauthorized use.

## IV.    IMPLEMENTATION OF CERTAIN PRACTICES IN CONNECTION WITH THE PROVISION OF FINANCIAL CLEARING SERVICES

**IT IS FURTHER ORDERED** that, when engaged in Non-Consumer-Facing Activity by providing financial clearing services, Defendants and their officers, agents, representatives, and employees, and all persons in active concert or participation with any one or more of them who receive actual notice of this Stipulated Order by personal service or otherwise, directly or through any corporation, subsidiary, division, or other device, shall:

A.    Compare usage data against their wireless carrier or other network provider customer's roaming partner's invoice to check for any discrepancies related to payment amounts, data or time usage, rating differences or potential rounding differences; and

B.    If discrepancies greater than ten percent (10%) are found, notify their wireless carrier or other network provider customer and the customer's roaming partner of such discrepancies before any payment is approved by the customer.

C.    If a roaming partner's invoices contain discrepancies in an amount greater than ten percent (10%) in three consecutive months, make reasonable inquiries of the roaming partner and report the results of such inquiries to the wireless carrier or other network provider customer.

## V. PREVENTION OF UNAUTHORIZED BILLING

**IT IS FURTHER ORDERED** that, when engaged in Consumer-Facing Activity that is not subject to this Order's Prohibition on Enhanced Services Billing, Defendants shall not, directly or through an intermediary, place charges for any products or services on any bill to consumers unless the consumer has expressly authorized such charge. For purposes of establishing any violation of this Section, the FTC need only produce evidence sufficient to support a prima facie case of allegedly unauthorized billing or charges. The burden shall then be on the Defendants to prove by a preponderance of the evidence either (i) that the allegedly unauthorized billing or charges were in fact authorized or (ii) that Defendants did not know and should not have known that the allegedly unauthorized billing or charges were unauthorized.

## VI.    1999 ORDER VACATED

**IT IS FURTHER ORDERED** that this Stipulated Order supersedes the 1999 Order entered by this Court, which is hereby vacated as moot.

## VII. ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Order:

A.    Each Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.    For 20 years after entry of this Order, each Defendant must deliver a copy of this Order to: (1) all of its principals, officers, directors, and LLC managers and members; (2) all of its employees, agents, and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order

10

for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.    From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## VIII. COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the Commission:

A.    One year after entry of this Order, Defendants must submit a joint compliance report, sworn under penalty of perjury, which must:

    1.    Identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with each Defendant;

    2.    Identify all of the Defendants' businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

    3.    Describe the activities of each business, including the goods and services offered and the means of advertising, marketing, and sales, and the involvement of each Defendant;

    4.    Describe in detail whether and how each Defendant is in compliance with each Section of this Order; and

    5.    Provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.    For 20 years after entry of this Order, Defendants must submit a compliance

notice, sworn under penalty of perjury, within 14 days of any change in the following:

    1.    Any designated point of contact; or

    2.    The structure of any Defendant or any entity that any Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

    C.    Defendants must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against any Defendant within 14 days of its filing.

    D.    Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

    E.    Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:  Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580. The subject line must begin:  FTC v. Hold Billing Services, et al., X980069.

## IX. RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendants must create certain records for 20 years after entry of the Order, and retain each such record for 5 years. Specifically, Defendants must create and retain the following records:

      A.     accounting records showing the revenues from all goods or services sold;

      B.     personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

      C.     records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

      D.     all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

      E.     a copy of each unique advertisement or other marketing material.

## X. COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order and any failure to transfer any assets as required by this Order:

      A.     Within 14 days of receipt of a written request from a representative of the Commission, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69. Defendants may assert any and all applicable rights or privileges in the Federal Rules of Civil Procedure, the

13

Federal Rules of Evidence, or any other applicable law.

B.     For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant. Defendants must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.     The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1. Defendants may assert any and all defenses, rights, or privileges available to them.

## XI. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order, and this case is now CLOSED.

It is so ORDERED.

SIGNED this 19th day of May, 2016.


FRED BIERY
UNITED STATES DISTRICT JUDGE

14

SO STIPULATED AND AGREED:

FOR PLAINTIFF FEDERAL TRADE COMMISSION

Robin L. Moore, Attorney
Federal Trade Commission
600 Pennsylvania Ave. NW, Mailstop CC-9528
Washington, DC 20580
202-326-2167 (telephone)
202-326-3197 (facsimile)
rmoore@ftc.gov
COUNSEL FOR FEDERAL TRADE COMMISSION


FOR DEFENDANTS BILLING SERVICES GROUP LIMITED, BILLING SERVICES
GROUP NORTH AMERICA, INC., BSG CLEARING SOLUTIONS NORTH AMERICA,
LLC, HBS BILLING SERVICES COMPANY, ENHANCED BILLING SERVICES, INC.,
BILLING CONCEPTS, INC., AND ACI BILLING SERVICES, INC.

Margaret E. Krawiec
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005
202-371-7303 (telephone)
202-661-9123 (facsimile)
margaret.krawiec@skadden.com
COUNSEL FOR DEFENDANTS

Norman M. Phipps
AS AN OFFICER OF DEFENDANTS

Date: 3/28/16

15